UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

CIVIL ACTION NO. 3:11-CV-165-H

SECURITIES AND EXCHANGE  PLAINTIFF
COMMISSION

V.

PATRICK M. CARROLL, et. al.  DEFENDANTS

**MEMORANDUM OPINION AND ORDER**

Plaintiff, the United States Securities and Exchange Commission (the "SEC"), brought this action against eight defendants for alleged violations of Section 10(b) of the Securities Exchange Act of 1934 ("SEA"), 15 U.S.C. § 78j(b) and its accompanying Rule 10b-5, 17 C.F.R. § 240.10b-5. The Complaint alleges insider trading in securities of Louisville-based Steel Technologies, Inc. ("STTX") prior to the February 28, 2007 announcement that Mitsui & Co. (USA) Inc. ("Mitsui") would acquire STTX. Two defendants, David Mark Calcutt and Christopher T. Calcutt (collectively the "Calcutts" or "Defendants") have moved to dismiss the Complaint for lack of personal jurisdiction, improper venue, and failure to state a claim. *See* Fed. R. Civ. P. 12(b)(2), 12(b)(3), and 12(b)(6). This Memorandum Opinion and Order addresses only Defendants' motion to dismiss for lack of personal jurisdiction.

I.

The Court need only briefly summarize the facts as they pertain to the Calcutts for purposes of this motion. The Court takes all well-pleaded facts from the Complaint as true at the motion-to-dismiss stage of litigation. *Benzon v. Morgan Stanley Distribs., Inc.*, 420 F.3d 598, 608-09 (6th Cir. 2005) (citing *Morgan v. Church's Fried Chicken*, 829 F.2d 10, 12 (6th Cir.

1987)).

The Calcutts, both North Carolina residents, are brothers and neighbors. David Calcutt is the Vice President of Sales for STTX's Southeast Region. According to the Complaint, in January and February 2007, David learned nonpublic information about Mitsui's impending acquisition of STTX from Michael Carroll, STTX's President and Chief Operating Officer. He learned this information through phone calls with Michael and possibly on a hunting trip he attended with Michael in Wyoming.

On January 5, 2007, before learning about the Mitsui acquisition, David sold all of the STTX stock held in his brokerage account and $25,000 worth of STTX stock in his 401(k) account, reducing his position in STTX to 1.9 percent of his 401(k) portfolio. The sale price was $17.38 per share. After learning about the acquisition, David first placed limit orders to purchase STTX stock at $17.75 and $18.50 per share. Both orders were fulfilled. Then, in the next two weeks, David purchased more than $160,000 worth of STTX stock in his 401(k) account, liquidating some of his mutual fund holdings and taking out a margin loan to help fund his order. At least 2,000 of the STTX shares David purchased cost $19.42 per share. These purchases increased his position in STTX to roughly 45 percent of his 401(k) portfolio.

David shared the nonpublic information he learned from Michael about the Mistui acquisition with his brother, Christopher. As brothers and neighbors, the Calcutts talked regularly in person and on the phone. David placed two phone calls to Christopher on the 16th and 17th of February. Either during these phone conversations or during an in-person conversation, David told Christopher about the forthcoming Mistui acquisition. Christopher purchased 400 shares of STTX stock on February 21. To fund this purchase, Christopher sold

2

recently-acquired shares of another stock for a small loss and took out a margin loan. He sold all of his STTX stock the day after the company publicly announced the acquisition.

II.

The Calcutts move this Court to dismiss the Complaint for a lack of personal jurisdiction. Fed. R. Civ. P. 12(b)(2). They concede that the SEA provides for nationwide venue and service of process,[1] but argue the Court's exercise of personal jurisdiction over the Defendants must still comport with the constitutional minimum requirements of due process. *See, e.g.*, *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945); *World-Wide Volkswagon Corp. v. Woodson*, 444 U.S. 286, 293 (1980). They urge this Court to follow decisions from federal courts in other circuits requiring a defendant under the SEA to have minimum contacts with the forum state before exercising personal jurisdiction. *See, e.g.*, *S.E.C. v. Unifund SAL*, 910 F.2d 1028, 1033 (2d Cir. 1990); *Allison v. Lomas*, 387 F. Supp. 2d 516, 519 (M.D.N.C. 2005). Defendants argue that any contacts they have had with Kentucky, the forum state, are so negligible that exercising personal jurisdiction would not comport with due process.

The Court need not assess the degree to which the Calcutts have contacts with Kentucky

---

[1] 15 U.S.C. § 78aa provides that: "The district courts of the United States and the United States courts of any Territory or other place subject to the jurisdiction of the United States shall have exclusive jurisdiction of violations of this chapter or the rules and regulations thereunder, and of all suits in equity and actions at law brought to enforce any liability or duty created by this chapter or the rules and regulations thereunder. Any criminal proceeding may be brought in the district wherein any act or transaction constituting the violation occurred. Any suit or action to enforce any liability or duty created by this chapter or rules and regulations thereunder, or to enjoin any violation of such chapter or rules and regulations, may be brought in any such district or in the district wherein the defendant is found or is an inhabitant or transacts business, and process in such cases may be served in any other district of which the defendant is an inhabitant or wherever the defendant may be found. In any action or proceeding instituted by the Commission under this chapter in a United States district court for any judicial district, a subpoena issued to compel the attendance of a witness or the production of documents or tangible things (or both) at a hearing or trial may be served at any place within the United States. Rule 45(c)(3)(A)(ii) of the Federal Rules of Civil Procedure shall not apply to a subpoena issued under the preceding sentence. Judgments and decrees so rendered shall be subject to review as provided in sections 1254, 1291, 1292, and 1294 of Title 28. No costs shall be assessed for or against the Commission in any proceeding under this chapter brought by or against it in the Supreme Court or such other courts."

or whether such contacts support an exercise of personal jurisdiction. Despite Defendants' suggestion that Sixth Circuit law on the effect of the SEA's nationwide service provision is unsettled, the law appears to be clear. The current view of the Sixth Circuit is that where a federal statute, like the SEA, provides for nationwide service of process, the constitutional due process strictures articulated in *International Shoe* and its progeny do not apply. *United Liberty Life Ins. Co. v. Ryan*, 985 F.2d 1320, 1330 (6th Cir. 1993). The SEA "confers personal jurisdiction in any federal district court over any defendant with minimum contacts to the United States," irrespective of the defendant's contacts to the state in which the district court sits. *Id.*

Defendants assert that "the Sixth Circuit has acknowledged a requirement of minimum contacts with the forum state for claims brought under the ERISA statute" in a post-*United Liberty* case and this Court should likewise apply such a requirement to an SEA case. *See NGS Am., Inc. v. Jefferson*, 218 F.3d 519, 524 n.5 (6th Cir. 2000) ("it is not universally accepted by the courts of appeals that a nationwide service of process provision suffices for personal jurisdiction"). This Court sees this comment as merely acknowledging some differences among the circuits. The Sixth Circuit has not backtracked from its unequivocal holding in *United Liberty*. In the same footnote Defendants cite in their brief, Judge Boggs explains that the court was not deciding whether a "national contacts approach to [ERISA] would comport with Fifth Amendment due process" and if it were deciding that issue, "the weight of Sixth Circuit precedent supports acceptance of the national contacts approach." *Id.* (citing *Haile v. Henderson Nat'l Bank*, 657 F.2d 816 (6th Cir. 1981); *United Liberty*, 985 F.2d at 1330). Furthermore, the Sixth Circuit confirmed a year later that ERISA's national service of process provision renders a state-based minimum contacts analysis "simply inapposite." *Med. Mut. of Ohio v. DeSoto*, 245

4

F.3d 561, 567 (6th Cir. 2001).

For now, at least, the law is clear in the Sixth Circuit that a court has personal jurisdiction over any defendant to a SEA action with minimum contacts to the United States. *United Liberty*, 985 F.2d at 1330. It is equally clear that the Calcutts, as U.S. citizens, have such contacts. Having raised no other basis for challenging this Court's personal jurisdiction over them, Defendants' motion to dismiss will be denied.

Being otherwise sufficiently advised,

IT IS HEREBY ORDERED that Defendants' motion to dismiss for lack of personal jurisdiction is DENIED. The Court will address the Calcutts' other motions to dismiss, along with motions filed by their co-defendants, in separate memorandum opinions and orders.

This is not a final order.

cc;   Counsel of Record