UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

CIVIL ACTION NO. 3:11-CV-165-H

SECURITIES AND EXCHANGE                                                    PLAINTIFF
COMMISSION,

V.

PATRICK M. CARROLL, et al.,                                               DEFENDANTS


**MEMORANDUM OPINION AND ORDER**

Plaintiff, the United States Securities and Exchange Commission (the "SEC"), brought

this action against eight defendants for alleged violations of Section 10(b) of the Securities

Exchange Act of 1934 ("SEA"), 15 U.S.C. § 78j(b) and its accompanying Rule 10b-5, 17 C.F.R.

§ 240.10b-5. The Complaint alleges insider trading in securities of Louisville-based Steel

Technologies, Inc. ("STTX") prior to the February 28, 2007 announcement that Mitsui & Co.

(USA) Inc. ("Mitsui") would acquire STTX. David Mark Calcutt, Christopher Calcutt, Patrick

Carroll, William Carroll, James Carroll, David Stitt, John Monroe, and Stephen Somers

(collectively, the "Defendants") have each filed motions to dismiss for failure to state a claim.

Fed. R. Civ. P. 12(b)(6).[1]

I.

In considering these motions to dismiss, this Court must accept all factual allegations as

---

[1] David and Christopher Calcutt have also moved to dismiss the Complaint based on lack of personal jurisdiction and improper venue and all Defendants have also moved to sever the case. The Court will address these motions in separate memorandum opinions and orders.

true and construe the Complaint in a light favorable to the SEC.  *Logsdon v. Hains*, 492 F.3d

334, 340 (6th Cir. 2007).  However, it "need not accept as true legal conclusions or unwarranted

factual inferences."  *Gregory v. Shelby Cnty., Tenn.*, 220 F.3d 433, 446 (6th Cir. 2000) (citing

*Mixon v. Ohio*, 193 F.3d 389, 400 (6th Cir. 1999)).

In mid-December 2006, executives from Mitsui made an offer during a meeting in

Louisville to purchase STTX for $30 per share.  Michael Carroll, President and Chief Operating

Officer of STTX, attended this meeting.  On January 8, 2007, Michael Carroll learned Mitsui's

Board of Directors would approve the acquisition on February 28, 2007.  On January 23, Mitsui

and STTX executed an exclusivity agreement and Mitsui provided a non-binding written

expression of interest to acquire STTX for $30 per share.  The STTX Board of Directors learned

of the proposed transaction two days later.  Executives from each company, including Michael

Carroll, engaged in the due diligence process from January into mid-February.  He also took

Mitsui executives on tours of STTX facilities in Canton, Michigan and Ohio.  On Friday,

February 23, STTX officers were told to report to Louisville for an officers meeting on Monday,

February 26.  The company publicly announced the deal on February 28, 2007.

Each of the Defendants received information about the forthcoming Mitsui acquisition

and purchased STTX securities prior to the public announcement.  How they received the

information and how they purchased STTX stock varied.  The Complaint organizes the

Defendants into four groups: (a) David Stitt, John Monroe, and Stephen Somers (the

"Pennsylvania Defendants"); (b) David Mark Calcutt and Christopher Calcutt (the "North

Carolina Defendants"); (c) Patrick Carroll and James Carroll (the "Michigan Defendants"); and

(d) William "Tad" Carroll (the "Kentucky Defendant").  One person from each group was a Vice

2

President of Sales at STTX who learned of the acquisition and, with the exception of Tad Carroll, shared that information with another member of the group.

A.

David Stitt is a Vice President of Sales for STTX's Northeast Region and lives in Pennsylvania. Like other STTX officers, Stitt was told on Friday, February 23, 2007 that he must fly to corporate headquarters in Louisville to attend an officers meeting the following Monday. He was not told the purpose of the meeting. This was the first time Stitt had been told to fly to Louisville for a meeting on such short notice without being told the meeting's purpose. Soon after learning of the scheduled meeting, Stitt placed 13 calls to a phone number at STTX's headquarters between 9:00 a.m. and 3:22 p.m. Then Stitt received five calls from that same number between 3:58 and 4:41 p.m. At no other point in February or March 2007 did Stitt receive such a close succession of calls from corporate headquarters. As soon as one of these calls ended, Stitt ordered a purchase of $38,500 worth of STTX stock through his 401(k) account. Stitt made this order having learned information about the forthcoming Mitsui acquisition.

Before his purchase of STTX stock in the days leading up to the announcement of the Mitsui acquisition, Stitt had not made a transaction in his 401(k) account for 17 months. In September 2005, he reduced his interest in STTX stock to approximately two percent of his 401(k) portfolio. His STTX holdings remained at that level until the February 2007 purchase, which increased it to 17 percent of the portfolio. Stitt also needed extra money at the time he purchased the STTX stock, as he had recently requested a $20,000-loan from his 401(k) account.

After learning about the Mitsui acquisition and purchasing $38,500 worth of STTX stock,

Stitt told his mother and his best friend, defendant John Monroe, about the acquisition. Stitt placed calls on February 24 and 25, a Saturday and Sunday, to Monroe's work phone and cellular phone. The next day, Monroe asked his broker to open a brokerage account to immediately purchase STTX securities. Monroe's broker had offered to open such an account for nearly a year, but Monroe had not accepted his offer. His broker faxed a new account application to Charles Schwab with a cover page indicating the account needed to be opened for an immediate trade. The broker sought an exception from his employer to the usual requirement of an original signature and receipt of funds before opening an account, which allowed Monroe to place his order for STTX stock that same day. Monroe describes himself as an "infrequent" trader and this purchase was his largest to date.

The same day Monroe opened his brokerage account to purchase STTX stock, he placed a 10-minute call to his close friend, defendant Stephen Somers, and told him about the forthcoming acquisition of STTX. Somers knew that Monroe was close friends with Stitt and that Stitt worked at STTX. That day, Somers sold General Electric stock he had held for more than a year and used the proceeds to purchase STTX stock in his personal brokerage account. Aside from closing a short position in another stock in August 2006, Somers had not made any transactions in that account in the previous year.

B.

David Mark Calcutt is the Vice President of Sales for STTX's Southeast Region and lives in North Carolina. Calcutt had many communications with Michael Carroll, STTX's President and COO, in January and February 2007 from which he learned of the forthcoming Mitsui acquisition of STTX. The two officers were on a hunting trip together in Wyoming on the

weekend of January 20, and had multiple phone conversations between January 23 and 29. He placed two limit orders to purchase STTX stock on January 29 and 30, making calls to Michael Carroll's cellular phone before and after the orders. These two orders for a total of 5,000 shares were filled at $17.75 and $18.50 per share. Less than a month earlier, Calcutt had sold all of the STTX stock held in his personal brokerage account at $17.38 per share, as well as $25,000 worth of STTX stock in his 401(k) account. In February, he purchased more STTX stock within minutes of a phone conversation with Michael Carroll. Calcutt had purchased more than $200,000 worth of STTX stock in the month before the public announcement of the Mitsui acquisition, increasing the position of STTX in his 401(k) portfolio from under two percent to 45 percent.

David Calcutt shared the nonpublic information he learned from Michael Carroll about the Mitsui acquisition with his brother, Christopher Calcutt. As brothers and neighbors, the Calcutts talked regularly in person and on the phone. David placed two phone calls to Christopher on the 16th and 17th of February. Either during these phone conversations or during an in-person conversation, David told Christopher about the forthcoming Mitsui acquisition. Christopher purchased 400 shares of STTX stock on February 21. To fund this purchase, Christopher sold recently-acquired shares of another stock for a small loss and took out a margin loan. He sold all of his STTX stock the day after the company publicly announced the acquisition, the stock having appreciated in value 60 percent.

## C.

Patrick Carroll was the Vice President of Sales for STTX's Central Region at the time of the Mitsui acquisition and was living in Michigan. Patrick is the brother of Michael Carroll and

William "Tad" Carroll, a co-defendant in this case.  Patrick learned about the forthcoming Mitsui acquisition through communications with Michael and from the repeated tours Mitsui executives did at the Canton, Michigan facility where Patrick worked.  Michael introduced Patrick to the executives during a February 12 tour and remained in Michigan to meet with Patrick the next day.  On February 14, Patrick and Michael spoke on the phone and had e-mail correspondence. One e-mail from Michael noted that STTX "may need to call a special meeting next week anyway in Louis[ville]."  Within two hours of receiving that e-mail, Patrick ordered the purchase of roughly $60,000 worth of STTX stock through his 401(k) account.

James Carroll is Patrick Carroll's son and the nephew of Michael and Tad Carroll.  At the time of the Mitsui acquisition, James was a student majoring in finance at Ferris State University in Big Rapids, Michigan.  James traveled to Louisville for his grandmother's funeral on Saturday, February 24.  His father and uncles were also at the funeral.  The next day, James made the seven-hour drive back to Michigan and at 8:23 p.m. ordered the purchase of 300 shares of STTX at $19.21 per share, using a margin loan.  On Monday, he tried to open an options account, but the account provider denied his application.  James had never before purchased stock on margin and in late-January 2007 he told his father in an e-mail that he thought STTX stock was "way overvalued" at $18.73 per share.

### D.

William "Tad" Carroll is the Vice President of Sales for STTX's Southern Region and is the brother of Michael and Patrick Carroll.  Tad spoke with Michael both on the phone and in person from Thursday, January 25 to Sunday, January 28.  Michael was working on the Mitsui acquisition during this period.  Michael and Tad spent part of that Saturday together taking care

of their mother.  Tad learned about the forthcoming Mitsui acquisition through these conversations.  On Sunday, Tad ordered the purchase of approximately $17,500 of STTX stock through his 401(k) account.

Tad took off from work the week of February 19 to care for his critically ill mother.  Tad had several phone calls that week with Michael, who was working on the company's strategy for communicating the acquisition to STTX's officers and the public.  On Tuesday, February 20, Tad ordered the purchase of $85,000 worth of STTX stock through his 401(k) account.  Prior to these purchases, Tad had not made any transactions in his 401(k) account in the previous 18 months. The purchases increased the position of STTX stock in Tad's 401(k) portfolio from one percent to 35 percent.

## II.

Defendants have filed separate motions to dismiss and supporting memoranda of law, each arguing the SEC's Complaint fails to state a claim under the SEA 10(b) and should be dismissed.  *See* Fed. R. Civ. P. 12(b)(6).  To survive a motion to dismiss, the Complaint "must allege facts that, if accepted as true, are sufficient 'to raise a right to relief above the speculative level' and to 'state a claim to relief that is plausible on its face.'"  *Hensley Mfg. v. ProPride, Inc.*, 579 F.3d 603, 609 (6th Cir. 2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 and 570 (2007)).  Facial plausibility requires "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949 (2009) (citing *Twombly*, 550 U.S. at 556).  Furthermore, the SEC's Complaint is subject to Fed. R. Civ. P. 9(b) because a SEA 10(b) violation sounds in fraud.  *See, e.g.*, *SEC v. Espuelas*, 579 F. Supp. 2d 461, 469 (S.D.N.Y. 2008) (fraud-based

securities complaints brought by the SEC are subject Rule 9(b)'s heightened pleading standards). However, the parties dispute what Rule 9(b) requires the SEC to plead when alleging an insider trading violation of the SEA 10(b). The Court will address those arguments below.

The SEC may prove its case against each of the Defendants under the "classical" theory[2] of insider trading, which includes liability as a "tipper" or "tippee." Under the classical theory, the SEC must allege that a corporate insider traded in the securities of his or her corporation on the basis of material, nonpublic information. *U.S. v. O'Hagan*, 521 U.S. 642, 651-52 (1997) (citing *Chiarella v. U.S.*, 445 U.S. 222, 228 (1980)). A tippee – one who receives material, nonpublic information about a company from someone in a fiduciary relationship to that company, Black's Law Dictionary 1621 (9th ed. 2009) – has a duty to not trade on information improperly disclosed by an insider. *Dirks v. SEC*, 463 U.S. 646, 660 (1983). An insider trading claim against a tippee must allege: (1) the tipper possessed material, non-public information about the corporation; (2) the tipper gave this information to the tippee; (3) the tippee purchased the corporation's securities while possessing the disclosed information; (4) the tippee knew or should have known the tipper violated a relationship of trust in disclosing the information; and (5) the tipper benefitted from the disclosure. *SEC v. Blackwell*, 291 F. Supp. 2d 673, 696 (S.D. Ohio 2003) (citing *SEC v. Warde*, 151 F.3d 42, 47 (2d Cir. 1998)); *see also SEC v. Blackman*, No. 3:99-1072, 2000 WL 868770, at *6 (M.D. Tenn. May 26, 2000) (adopting same elements of tippee liability from *Warde*).

---

[2] Courts also recognize the "misappropriation" theory by which a person who is neither an insider nor the tippee of an insider may be held liable. *See U.S. v. O'Hagan*, 521 U.S. 642, 652-53 (1997); *SEC v. Blackwell*, 291 F. Supp. 2d 673, 688 n.7 (S.D. Ohio 2003); *SEC v. Clark*, 915 F.2d 439, 449 (9th Cir. 1990). Here, the SEC alleges each defendant is either an insider or a tippee of an insider, making a "misappropriation" analysis unnecessary.

At trial, the SEC may prove these necessary elements of an insider trading action through direct or circumstantial evidence. The SEC often will be unable to produce direct evidence of communication of nonpublic information, but that is not a bar to relief. *SEC v. Sargent*, 229 F.3d 68, 74 (1st Cir. 2000); *SEC v. Roszak*, 495 F. Supp. 2d 875, 886-87 (N.D. Ill. 2007) (SEC entitled to prove its case through circumstantial evidence); *SEC v. Ginsburg*, 362 F.3d 1292, 1298 (11th Cir. 2004) (same); *SEC v. Singer*, 786 F. Supp. 1158, 1164-65 (S.D.N.Y. 1992) (same). Where circumstantial evidence is sufficient at trial, pleading facts that, taken as true, would establish such evidence is sufficient to survive a motion to dismiss. *See, e.g.*, *EP Medsystems, Inc. v. EchoCath, Inc.*, 235 F.3d 865, 880 (3d Cir. 2000) (security fraud plaintiffs can plead scienter by alleging circumstantial evidence). To be sure, the SEC may not rely on "a formulaic recitation" of 10(b)'s elements, *Twombly*, 550 U.S. at 555, but allegations of facts that provide circumstantial proof of a 10(b) violation will suffice.

III.

The Defendants argue the SEC's Complaint is deficient as to the information each defendant knew, the materiality of that information, how and when they received the information, and as to the requisite scienter. Many of the arguments overlap and fail because they are based on holding the SEC to a standard of pleading specificity that is unsupported by SEA 10(b) case law. Some Defendants also wrongly argue that the SEC is proceeding under the "misappropriation" theory of insider trading liability and has failed to meet the elements required under that theory. *See supra* note 2. The Court will first address the Pennsylvania Defendants' arguments because the legal analysis will also address the arguments of the Kentucky, Michigan, and North Carolina Defendants.

A.

The Pennsylvania Defendants – Stitt, Monroe, and Somers – filed separate motions but make essentially the same arguments in support of dismissing the SEC's Complaint. The Court first addresses Stitt's brief, as it presents the fullest explanation of the arguments and, as tippees, Monroe's and Somers's liability derives from Stitt's alleged possession and disclosure of material, nonpublic information. The Court will then address remaining arguments in Somers's brief. Monroe incorporates by reference the arguments made by Stitt and Somers, requiring no separate analysis.

i.

Stitt's primary argument is the Complaint fails to allege he possessed material, nonpublic information when he traded in STTX securities. He notes the only information the SEC adequately alleges he possessed was knowledge that "he must attend an officer meeting at STTX's Louisville headquarters at 4:00 p.m. on Monday, February 26, 2007." Mere knowledge of a meeting with an unknown topic, the argument goes, is not material information and cannot support 10(b) liability.

Information is material for the purposes of 10(b) "only if a reasonable investor would have viewed the [information] as having significantly altered the total mix of information available." *Ashland, Inc. v. Oppenheimer & Co., Inc.*, 648 F.3d 461, 468 (6th Cir. 2011) (internal quotation marks and citation omitted). As Stitt points out in his brief, at least one district court determined, after a bench trial, that "the fact that meetings were advanced . . . [was] not proven to be [a] material fact." *SEC v. Fox*, 654 F. Supp. 781, 792 (N.D. Tex. 1986). Stitt reasons that since knowledge of multiple meetings was immaterial in *Fox*, knowledge of a single

meeting here must also be immaterial as a matter of law. Although the Court doubts the mere number of meetings requires such a conclusion, Stitt's argument has a more fundamental flaw: the SEC alleges Stitt knew more than that STTX had called an unusual meeting.

The Complaint alleges Stitt learned about the forthcoming acquisition of STTX prior to purchasing STTX stock on February 23. The SEC claims Stitt knew about the acquisition – not that he merely had a "hunch" based on the scheduling of an unusual meeting, as Stitt contends. Learning of the meeting likely created a "hunch," but the SEC has alleged specific facts giving rise to a plausible inference that Stitt followed up on that hunch and learned of the Mitsui acquisition.[3]

The Complaint describes a flurry of phone calls between Stitt and headquarters following his notification about the meeting and that Stitt made a substantial stock purchase immediately after concluding one of these calls. Stitt's prior trading history – no transactions in his 401(k) account in the previous 17 months – further corroborates the SEC's allegation that Stitt learned about the acquisition before his purchase. *See, e.g.*, *SEC v. Musella*, 748 F. Supp. 1028, 1038-39 (S.D.N.Y. 1989) (concluding defendant's "unusually large" trade suggested a confidence in the investment that supported inference of insider trading); *SEC v. Roszak*, 495 F. Supp. 2d 875, 887 (N.D. Ill. 2007) (evidence defendant had access to an inside source of information about a proposed merger and made a large stock purchase soon after contacting that source was sufficient to defeat summary judgment). Furthermore, Stitt and Monroe made inconsistent statements to the SEC and the Financial Industry Regulatory Authority ("FINRA"), supporting

---

[3] Even if Stitt learned only that an acquisition was likely but not certain, such information could qualify as material. *Basic Inc. v. Levinson*, 485 U.S. 221, 233-34 (1988) (rejecting argument that pre-merger information is only material once there is "'agreement-in-principle' as to the price and structure of the transaction").

the inference Stitt possessed and passed along information regarding the acquisition. *See Musella*, 748 F. Supp. at 1040 ("false exculpatory statement evidences consciousness of guilt" that defendant knowingly traded on material, nonpublic information).

Viewing all the Complaint's alleged facts pertaining to Stitt, his materiality argument falls apart because knowledge of an upcoming merger – not just a "hunch" from a scheduled meeting – is among the most material information about a company a defendant could possess. Accordingly, Stitt does not argue information about the acquisition of STTX was immaterial; instead, he claims the SEC fails to allege "what that information was" as Rule 9(b) requires. Absent a "specific description of the alleged inside information" the Complaint should be dismissed, he argues. Mem. of Law in Support of Stitt's Mot. to Dismiss 11 (quoting *Log on Am. v. Promethean Asset Mgmt.*, 223 F. Supp. 435, 447 (S.D.N.Y. 2001)).

Rule 9(b) requires pleading with particularity, but the factual allegations necessary to meet that obligation will vary with the type of fraud alleged and the position of the parties. For example, in *Log on Am.*, the district court dismissed plaintiff's insider trading claim for failing to specify "what non-public information Plaintiff gave Defendants." 223 F. Supp. at 447. Where the plaintiff is the source of the alleged nonpublic information, a court will set a high bar for particularity, since plaintiff should know its exact contents. But courts have relaxed Rule 9(b)'s particularity requirements when facts are "peculiarly within the knowledge of defendants." *SEC v. Aragon Capital Mgmt. LLC*, No. 07 Civ. 919 (FM), 2008 WL 216320 (S.D.N.Y. Jan. 16, 2008) (citing *SEC v. Alexander*, 160 F. Supp. 2d 642, 649 (S.D.N.Y. 2001) (internal quotations and citation omitted); *accord Blackwell*, 291 F. Supp. at 691. The SEC need not allege the exact contents of communications between corporate insiders and tippees to state an insider trading

claim.  Although alleging a defendant possessed generic "material, nonpublic information" will not suffice, a general description of the inside information is adequate.  Here, the SEC's claim that Stitt learned about the forthcoming acquisition of STTX is sufficiently specific – it need not plead what could only be obtained through an admission by the parties involved.  *See, e.g.*, *SEC v. Singer*, 786 F. Supp. 1158, 1165 (S.D.N.Y. 1992) (plaintiff can establish prima facie case of insider trading without confession from tipper or tippee) *and SEC v. Bluestone*, No. 90-CV-72525-DT, 1991 WL 83960, at *1 (E.D. Mich. Jan. 24, 1991) (same).

The Sixth Circuit's decision in *New Albany Tractor, Inc. v. Louisville Tractor, Inc.*, 650 F.3d 1046 (6th Cir. 2011), applying the Supreme Court's "'plausibility' pleading standard" from the *Twombly* and *Iqbal* decisions, does not require dismissal as Stitt contends.  *Id.* at 1050.  The *New Albany* decision explained that a plaintiff may not rely on discovery to obtain facts necessary to allege its cause of action.  *Id.* at 1051 (citing *Iqbal*, 129 S.Ct. at 1954).  In that case, plaintiff did not allege the specific pricing information necessary to state a claim under the Robinson-Patman Act.  *Id.* at 1052.  Here, in contrast, Stitt has shown only that the SEC has failed to plead a fact unnecessary to its 10(b) cause of action.  The SEC does not have to prove exactly what Stitt was told, or by whom, regarding the acquisition.  *See, e.g.*, *SEC v. Lambert*, 38 F. Supp. 2d 1348, 1352 (S.D. Fla. 1999) (allegation unidentified person told defendants about a proposed merger sufficient to state a 10(b) claim).  The Court will not require the SEC to plead facts that it need not prove at trial.

Stitt's remaining arguments – to wit, the SEC fails to adequately allege a breach of fiduciary duty and scienter – depend upon his primary argument that the Complaint does not adequately allege he possessed material, nonpublic information.  Given the Court's rejection of

that premise, these arguments must also fail.

ii.

The Complaint alleges Stitt told his friend Monroe the information he learned about the forthcoming acquisition of STTX and Monroe passed that same information to Somers. As noted above in Section II, to state a claim against Monroe and Somers as "tippees" the SEC must allege they received and traded on material nonpublic information, they knew or should have known Stitt violated a relationship of trust in disclosing the information, and Stitt benefitted from the disclosure. *SEC v. Warde*, 151 F.3d 42, 47 (2d Cir. 1998).

Somers first argues[4] the Complaint fails to allege he received material nonpublic information. Like Stitt, Somers also asserts the SEC has only alleged Stitt had a "hunch" about a possible acquisition based on the scheduling of the February 26 meeting. If Stitt never possessed material nonpublic information, then he could not have tipped it to Monroe, nor Monroe to Somers. In fact, the SEC has alleged Stitt learned of the forthcoming acquisition, which was material nonpublic information. The SEC further alleges Stitt communicated this information to Monroe in phone calls made on the weekend of February 24-25 and that Monroe told Somers about the acquisition on February 26.

As with Stitt, Monroe's and Somers's trading behavior corroborates the materiality of the information they allegedly received. *SEC v. Mayhew*, 121 F.3d 44, 52 (2d Cir. 1997) (noting major factor in determining materiality is importance attached by those in possession of it). The Monday following his phone conversations with Stitt, Monroe opened a brokerage account to

---

[4] The Court addresses Somers's arguments, but its discussion applies equally to Monroe unless noted otherwise. Monroe incorporated by reference Stitt's and Somers's arguments.

14

immediately purchase STTX securities. After learning about the acquisition from Monroe, Somers sold General Electric stock he had held for more than a year and used the proceeds to buy STTX stock, his only transaction in his brokerage account in the past year, aside from closing a short position in another stock. Given the circumstantial evidence alleged, the SEC has adequately pled receipt of material nonpublic information.

Somers next argues that the SEC pleads no facts indicating Somers believed the information he received was obtained through a breach of fiduciary duty. As a preliminary matter, the Court disagrees with Somers's contention the SEC must allege what Somers believed, rather than what he knew or should have known. Somers's brief cites the *Warde* elements for tippee liability, which includes "the tippee knew or should have known that the tipper had violated a relationship of trust." Mem. of Def. Stephen Somers in Support of Mot. to Dismiss 5. Supreme Court precedent supports this formulation of the rule that a tippee is liable for what he or she should have known, not merely for what he or she subjectively believed. *See Dirks v. SEC*, 463 U.S. 646, 660 (1983) (tippee assumes duty to not trade on insider information when tippee knows or should know the insider's disclosure breached a fiduciary duty); *accord Musela*, 748 F. Supp. at 1038 (citing *Dirks*); *SEC v. Maio*, 51 F.3d 623, 633 (7th Cir. 1995) (same); *Blackwell*, 291 F. Supp. 2d at 696-97 (same); *Lambert*, 38 F. Supp. 2d at 1351 (same).

Here, the SEC's pleadings show it is plausible Monroe and Somers knew or should have known Stitt's disclosure was a breach of his fiduciary duties to STTX's shareholders. Stitt and Monroe were close friends and Monroe knew that Stitt was a VP of Sales for STTX. Monroe's rush to open a brokerage account and immediately purchase STTX stock suggests he knew he possessed secret information, *see Blackwell*, 291 F. Supp. 2d at 697, as does his subsequent

inconsistent statements to FINRA and the SEC. *SEC v. Euro Sec. Fund*, No. 98 Civ.,

7347(DLC), 2000 WL 1276246, at *3 (S.D.N.Y. Sept. 25, 2000) (evidence of evasiveness and

inconsistent statements support inference of guilty knowledge).

Likewise, the SEC alleges Somers knew that Stitt and Monroe were close friends, that

Stitt worked for STTX, and that Monroe told Somers the information about the acquisition he

learned from Stitt. Like Monroe, Somers's trading behavior suggests he knew he possessed

secret information. Furthermore, Somers has been a principal of Somers Brothers Capital, LLC,

a commodity trading advisor registered with the U.S. Commodity Futures Trading Commission.

A tippee's sophistication supports an inference of knowledge that information was obtained in

violation of the tipper's fiduciary duty. *Musela*, 578 F. Supp. at 442-43; *accord Blackman*, 2000

WL 868770 at *8 (defendants' experience in market as stockbrokers supports conclusion they

knew or should have known of breach of duty).[5]

Somers's third argument contends the SEC fails to allege Stitt or Monroe received any

benefit by disclosing the information about the acquisition, as the fifth *Warde* element of tippee

liability requires. However, the case law is clear that a gift of confidential information between

friends satisfies the personal benefit requirement. *Dirks*, 463 U.S. at 664 ("The elements of

fiduciary duty and exploitation of nonpublic information also exist when an insider makes a gift

of confidential information to a trading relative or friend."). The act is essentially the equivalent

---

[5] To the extent Somers also argues the Complaint fails to allege a breach of duty by Monroe, such a breach is not necessary. The inquiry is whether Somers knew the information was disclosed in violation of a breach of duty. His position within a chain of tippees is only material as to the SEC's burden at trial to prove Somers knew the source of the information he received. There is no requirement the initial tippee, Monroe, breach a separate duty other than the duty derived from the initial tipper, Stitt. *See Musela*, 748 F. Supp. at 1038; *accord U.S. v. Victor Teicher & Co., L. P.*, 785 F. Supp. 1137, 1150 (S.D.N.Y. 1992) (tippee of another tippee held liable under Rule 10b-5 when he knew the original tipper disclosed information in a breach of fiduciary duty).

of the tipper trading on the inside information and gifting the proceeds, which is undoubtedly

conduct proscribed by securities law.  Thus, the SEC's allegations of Stitt and Monroe's

friendship and Monroe and Somers's friendship satisfy the requirement that the tipper receive a

benefit by the disclosure.

Lastly, Somers argues the SEC fails to allege particular facts raising the inference he

acted with scienter.  The Court will not hold the SEC to the "strong inference" standard

Congress established for private litigants in the Private Securities Litigation Reform Act

("PSLRA").  *SEC v. Patel*, Civil No. 07-cv-39-SM, 2008 WL 781914, at *5-6 (D.N.H. March

24, 2008) (PSLRA's pleading standard for scienter does not apply to the SEC); *Blackman*, 2010

WL 868770 at *5 (same); *SEC v. Guenthner*, 212 F.R.D. 531, 532 n.1 (D.Neb. 2003) (same).

Rule 9(b) permits alleging the "conditions of a person's mind" generally and scienter can be

inferred from circumstantial evidence.  *SEC v. Michel*, 521 F.Supp. 2d 795, 827 (N.D.Ill. 2007)

(citing *Herman & MacLean v. Huddleston*, 459 U.S. 375, 391 n.30 (1983)).  As noted above, the

SEC has alleged sufficient facts supporting the inference Monroe and Somers knew or should

have known they were "trading on improperly obtained non-public information," which is all a

scienter finding requires.  *SEC v. Musella*, 678 F. Supp. 1060, 1062 (S.D.N.Y. 1988); *see also*

*Blackwell*, 291 F. Supp. 2d at 696-97 (analyzing requirement that defendant knew or should have

known tipper's disclosure breached a duty as a scienter requirement).

Upon thorough review, the Court considers the cases Somers and other Defendants cite to

be distinguishable and demonstrative of why the SEC's Complaint here meets Rule 9(b)'s

pleading standard.  In *SEC v. Truong*, 98 F. Supp. 2d 1085 (N.D.Cal. 2000), the court rejected

the SEC's attempt to infer knowledge of inside information from defendant working in open

cubicles and having routine contact with senior management, the same as any other employee at his corporation. *Id.* at 1098. Unlike here, the SEC in *Truong* "failed to garner direct or circumstantial evidence" that the defendant possessed material nonpublic information. *Id.* at 1099. Here, the SEC alleges well-timed trades in unusually large amounts, contrary to trading history, made in close proximity to communications with persons who knew about the Mitsui acquisition.

In *SEC v. Duclaud*, 184 F. Supp. 2d 365 (S.D.N.Y. 2002), the SEC had no evidence of telephone calls or meetings between the defendant and anyone with inside information. Furthermore, all of the defendant's trades occurred before his employer, a law firm, learned of a forthcoming tender offer and there was already "widespread speculation about a possible takeover" reported in national news outlets, triggering a sharp rise in the corporation's trading volume. *Id.* at 369, 378-79. Similarly, in *SEC v. Monarch Fund*, 608 F.2d 936 (2d Cir. 1979), the alleged inside information was too general to be material and evidence showed similar information was widely circulated among investors. *Id.* at 942-43. Here, the alleged inside information was specific: the forthcoming acquisition of STTX. That information was nonpublic and material, as defendants' trading behaviors indicate. These cases do not warrant dismissal of the Complaint against Somers or any other defendant.

### B.

Defendants David Mark Calcutt and Christopher Calcutt raise substantially the same legal arguments as Stitt and Somers. They argue the SEC fails to adequately allege exactly what information David Calcutt received, how and when he received it, what information he gave to Christopher Calcutt, and that defendants acted with scienter. The bar the Calcutts have set for

the SEC to clear at the pleading stage is impractical and unsupported by 10(b) case law. *See supra* discussion at Section III.A. The SEC is entitled to prove its case by circumstantial evidence and need not allege precisely what Michael Carroll, the alleged tipper, said to David Calcutt, or what David said to Christopher. Alleging that David learned about the forthcoming acquisition of STTX from Michael either through a series of phone calls or while on a trip together provides David adequate notice of the conduct the SEC claims violated securities law. The same holds for the allegations against Christopher. The Calcutts' scienter argument is grounded in their initial premise that the SEC has inadequately alleged possession of material nonpublic information. Thus, the arguments fail together.

As with the Pennsylvania Defendants discussed above, the Calcutts' trading behavior corroborates the allegation they possessed material nonpublic information. David quickly increased his position in STTX from less than two percent to roughly 45 percent of his 401(k) portfolio, after having sold STTX stock at a lower price a month earlier. Christopher funded his purchase of STTX stock by selling recently-acquired shares in another stock for a loss and taking out a margin loan. *See, e.g.*, *SEC v. Pardue*, No. Civ.A. 02-8048, 2005 WL 736884, at *6 (E.D.Pa. April 1, 2005) (defendant liquidating other stock holdings at a loss to fund purchase is circumstantial evidence of insider trading). Moreover, David Calcutt's explanation for his trades – he was bullish on steel industry stocks in late 2006 and early 2007 – is implausible given his sale of STTX stock in early January 2007 and his not acquiring stock in any other steel company during this period. *See, e.g.*, *id.* at *5-6 (defendant's implausible reasons for suspiciously-timed trades, made after contacts with persons with inside information, are circumstantial evidence of insider trading).

The SEC has pled sufficient facts by which it is plausible David and Christopher Calcutt violated SEA 10(b) and Rule 10b-5. Although the Complaint does not allege the exact contents of the tip the defendants received or when they received it, the SEC has provided more than threadbare conclusions. The SEC does not have to prove its claim by direct evidence at trial. The Court will not require a smoking gun allegation where smoking gun evidence is unnecessary.

C.

William "Tad" Carroll, Patrick Carroll, and James Carroll make similar arguments. To summarize, Patrick Carroll argues the SEC alleges only that he knew Mitsui officials toured his plant and STTX might call a special meeting of officers. He claims this information is not material. Like David Stitt, Patrick Carroll ignores the Complaint's specific allegation he learned about the forthcoming acquisition, arguing the allegation is "generalized and conclusory." This materiality and particularity argument fails for the reasons explained *supra* Section III.A. The SEC need not specify more than that Michael Carroll allegedly told Patrick about the impending acquisition, which constitutes material information. Patrick's subsequent action – purchasing $60,000 worth of STTX stock after making no stock transactions in his 401(k) account for twenty months – corroborates the materiality of the information he received.

James Carroll's arguments are premised on Patrick's argument that the Complaint inadequately alleges Patrick's possession of material nonpublic information. Because this Court finds the SEC has sufficiently pled this element of its cause of action against Patrick, James's argument must also fail. James's conduct also corroborates the materiality of the information Patrick received and passed to his son. Although recently describing STTX stock as overvalued,

James purchased STTX stock after a seven-hour return drive to Michigan from a family funeral in Kentucky and tried to open an options account the next morning. The Complaint states an insider trading claim against both Patrick and James Carroll.

William "Tad" Carroll argues the Complaint fails to allege the exact material nonpublic information Michael Carroll told him and when. The Court has sufficiently addressed this argument, finding Defendants' proposed pleading standard is unsupported by law and would make enforcement of insider trading law impracticable absent party admissions. Moreover, like the other defendants, Tad's trades support the plausible inference he possessed material nonpublic information. Having made no trades in his 401(k) account since July 2005, Tad increased his position in STTX stock from one percent of his portfolio to 35 percent. The SEC has stated an insider trading claim against Tad Carroll.

Being otherwise sufficiently advised,

IT IS HEREBY ORDERED that the motions to dismiss filed by defendants Patrick Carroll, James Carroll, William Carroll, David Mark Calcutt, Christopher Calcutt, David Stitt, John Monroe, and Stephen Somers are DENIED. The Court will address the remaining outstanding motions in separate memorandum opinions and orders.

cc:      Counsel of Record