UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

CIVIL ACTION NO. 3:11-CV-165-H

SECURITIES AND EXCHANGE                                                           PLAINTIFF
COMMISSION

V.

PATRICK M. CARROLL, et al.                                                        DEFENDANTS

**MEMORANDUM OPINION AND ORDER**

Plaintiff, the United States Securities and Exchange Commission (the "SEC"), brought this action against eight defendants for alleged violations of Section 10(b) of the Securities Exchange Act of 1934 ("SEA"), 15 U.S.C. § 78j(b) and its accompanying Rule 10b-5, 17 C.F.R. § 240.10b-5. The Complaint alleges insider trading in securities of Louisville-based Steel Technologies, Inc. ("STTX") prior to the February 28, 2007 announcement that Mitsui & Co. (USA) Inc. ("Mitsui") would acquire STTX.

In previous memorandum opinions and orders, this Court denied motions filed by David Mark Calcutt and Christopher T. Calcutt (collectively the "Calcutts" or "Defendants") to dismiss the Complaint for lack of personal jurisdiction and failure to state a claim. Fed. R. Civ. P. 12(b)(2) and 12(b)(6). The Court now considers the most difficult of the initial issues: whether venue is proper as to the Calcutts. At first blush, it would appear unlikely that venue is proper because the Calcutts live in North Carolina and have had almost no contact with the state of Kentucky. However, the unusual breadth of the SEA's venue provisions makes it possible and requires careful analysis.

I.

The Court summarized the facts the SEC alleges as to the Calcutts in its previous order denying all defendants' 12(b)(6) motions:

> David Mark Calcutt is the Vice President of Sales for STTX's Southeast Region and lives in North Carolina. Calcutt had many communications with Michael Carroll, STTX's President and COO, in January and February 2007 from which he learned of the forthcoming Mitsui acquisition of STTX. The two officers were on a hunting trip together in Wyoming on the weekend of January 20, and had multiple phone conversations between January 23 and 29. He placed two limit orders to purchase STTX stock on January 29 and 30, making calls to Michael Carroll's cellular phone before and after the orders. These two orders for a total of 5,000 shares were filled at $17.75 and $18.50 per share. Less than a month earlier, Calcutt had sold all of the STTX stock held in his personal brokerage account at $17.38 per share, as well as $25,000 worth of STTX stock in his 401(k) account. In February, he purchased more STTX stock within minutes of a phone conversation with Michael Carroll. Calcutt had purchased more than $200,000 worth of STTX stock in the month before the public announcement of the Mitsui acquisition, increasing the position of STTX in his 401(k) portfolio from under two percent to 45 percent.
> David Calcutt shared the nonpublic information he learned from Michael Carroll about the Mitsui acquisition with his brother, Christopher Calcutt. As brothers and neighbors, the Calcutts talked regularly in person and on the phone. David placed two phone calls to Christopher on the 16th and 17th of February. Either during these phone conversations or during an in-person conversation, David told Christopher about the forthcoming Mitsui acquisition. Christopher purchased 400 shares of STTX stock on February 21. To fund this purchase, Christopher sold recently-acquired shares of another stock for a small loss and took out a margin loan. He sold all of his STTX stock the day after the company publicly announced the acquisition, the stock having appreciated in value 60 percent.

*SEC v. Carroll*, No. 3:11-CV-165-H, 2011 WL 5880875, at *3 (W.D.Ky. Nov. 23, 2011).

The Calcutts have jointly filed their motion to dismiss for improper venue and their supporting brief, but the factual circumstances as to David and Christopher require separate analyses. They argue that venue may not lie in the Western District of Kentucky where all of their alleged conduct occurred outside of Kentucky. Instead, they suggest that North Carolina is

the appropriate venue. The SEC responds that Defendants' motion should be denied because the SEA's broad venue provision, to which courts have applied a "co-conspirator theory of venue," allows it to bring the action here. *See, e.g.*, *Clayton v. Heartland Resources, Inc.*, No. 1:08-CV-94-M, 2008 WL 5046806, at *2-3 (W.D.Ky. Nov. 21, 2008).

## II.

Section 27 of the SEA provides that a plaintiff may bring a suit under the Act or its rules in any district where the defendant "is found or is an inhabitant or transacts business," or where "any act or transaction constituting the violation occurred." 15 U.S.C. § 78aa.[1] The SEC does not allege the former. Thus, venue depends solely on whether an act or transaction constituting the securities law violation occurred in Kentucky.

Courts have construed the "act or transaction" requirement liberally – the venue-conferring act need not "form the core of the claim" or "*itself* constitute a violation of the [SEA]." *Prettner v. Aston*, 339 F. Supp 273, 280 (D.Del. 1972) (internal quotations omitted); *see also Como v. Commerce Oil, Inc.*, 607 F.Supp. 335, 341 (S.D.N.Y. 1985) (same). Rather, any act in a forum district constituting an important step in the fraudulent scheme will suffice, even if the act is not itself fraudulent or illegal. *Mariash v. Morrill*, 496 F.2d 1138, 1144 (2d Cir. 1974) (citing *Hooper v. Mountain States Sec. Corp.*, 282 F.2d 195, 204 (5th Cir. 1960) *and Int'l Control Corp. v. Vesco*, 490 F.2d 1334, 1347 (2d Cir. 1974)). This broad construction

---

[1] The statute reads in relevant part: "Any criminal proceeding may be brought in the district wherein any act or transaction constituting the violation occurred. Any suit or action to enforce any liability or duty created by this chapter or rules and regulations thereunder, or to enjoin any violation of such chapter or rules and regulations, may be brought in any such district or in the district wherein the defendant is found or is an inhabitant or transacts business, and process in such cases may be served in any other district of which the defendant is an inhabitant or wherever the defendant may be found." The "any act or transaction" language applies expressly to criminal proceedings, but courts have interpreted "any such district" in the following sentence as incorporating this same language into the civil venue provision. *See, e.g.*, *Job Haines Home for the Aged v. Young*, 936 F. Supp. 223, 229 (D.N.J. 1996).

reflects one of the statute's "plain objectives, namely avoiding having related counts adjudicated in piecemeal fashion across several venues." *U.S. v. Johnson*, 510 F.3d 521, 528 (4th Cir. 2007).

The Court will review the various arguments in this context.

### A.

The SEC's strongest argument is that David received material, nonpublic information through communications with Michael Carroll, many of which were telephone calls to and from Louisville. Although David's receipt of inside information is not itself a securities law violation, the calls between David and Michael might still be acts qualifying the Western District of Kentucky as an appropriate venue. The SEC cites records of Michael's cellular telephone showing several calls made to and from David's cellular telephone in January and February 2007, while Michael was in Louisville. The SEC has not pleaded exactly when Michael gave David inside information, but the SEC may prove its case through circumstantial evidence. *See Carroll*, 2011 WL 5880875, at *9. The timing of the calls and David's trading behavior permit the inference he learned inside information during one or more of the calls. *Id.* at *19-20.

Defendants counter with two arguments. First, they argue the SEC's Complaint and supporting documents do not establish David received inside information from Michael while Michael was in Louisville. Without conceding ever receiving inside information, Defendants argue that by the Complaint's own terms, Michael may have tipped David while in Wyoming, not on a call from Kentucky. They also note Michael made calls to David during the relevant time period from the New York area. If the tip did not come from a Kentucky-based call, then venue cannot lie in Kentucky, they argue.

The allegations of the Complaint, however, argue against Defendants' narrow factual construct. The Complaint alleges David made two sets of trades, one on January 29-30 and another on February 16 and 22.[2] Both sets of trades were closely linked to one or more communications with Michael that revealed inside information. As to the January trades, Defendants' argument would require believing Michael told David about the impending Mitsui acquisition on the January 20 weekend Wyoming trip, but then said nothing else about it the subsequent week. STTX and Mitsui signed an exclusivity agreement and expression of interest on January 23. Michael and David had at least three telephone conversations between then and January 30. A reasonable inference from the Complaint is that Michael and David discussed the acquisition during their phone calls. Likewise, records reflect several calls in February between the two STTX officers in close proximity to David's trading and to the negotiation of the final written acquisition agreement between STTX and Mitsui.[3] The Court concludes that the SEC's Complaint adequately alleges Michael gave David material, nonpublic information during telephone calls while he was in Louisville.

B.

This case presents a close question that goes to the outer bounds of venue under Section 27 of the SEA. The inquiry is fact-based and the cases cited do not support the broad statements of law the parties propose control this case. Contrary to Defendants' position, the venue-

---

[2] David allegedly made the February 22 trade after learning the majority of his February 16 order was not processed.

[3] The Court notes the SEC has not provided Michael's location during the four-minute February 16 call, the same day David ordered purchase of more STTX stock. *See* Complaint ¶ 70. A finding that Michael was not in Kentucky during this particular call does not suggest that inside information did not pass in the many other Kentucky-based calls.

conferring act need not itself be illegal conduct. *See, e.g.*, *Hooper*, 282 F.2d at 204; *Dauphin Corp. v. Redwall Corp.*, 201 F. Supp. 466, 469-70 (D.Del. 1962). Defendants' reliance on *U.S. v. Geibel*, 369 F.3d 682 (2d Cir. 2004) is likewise misplaced. In that case, the Second Circuit held venue was improper where the insider trading defendants' only connection to New York was that their tipper misappropriated information there. The *Geibel* holding is inapposite to the instant case because *Geibel* was a criminal action and the Second Circuit was "determining the constitutionally appropriate venue for an action." 369 F.3d at 696-97. Although Section 27's "act or transaction" language is identical as to criminal and civil actions, criminal actions must also meet constitutional requirements. *See id.* at 696 (Sixth Amendment gives criminal defendant right to be tried in district where crime committed). Since the Constitution bars basing venue in criminal actions on "anterior criminal conduct," the Second Circuit held the tipper's "conduct was too anterior and remote to confer venue in the SDNY." *Id.* at 697. This application of a constitutional requirement in the criminal context does not inform the extent of Section 27 venue for civil actions.

However, the SEC's argument that "a single telephone call made . . . in furtherance of a scheme to violate the securities laws is sufficient to establish venue" is also an overstatement. In most cases cited for this proposition, the telephone calls were an inherent part of the illegal conduct, such as calls made to purchase securities with inside information or calls made to transmit fraudulent statements. *See, e.g.*, *Steinberg & Lyman v. Takacs*, 690 F. Supp. 263, 267-68 (S.D.N.Y. 1988) (allowing venue where defendants placed orders for stock via telephone calls into forum district but refused to pay for stock purchases); *Borg v. L & J Energy, Inc.*, No. 1:89-CV-1179, 1990 WL 122225, at *3-4 (W.D. Mich. May 25, 1990) (allowing venue where

defendants made calls and mailed letters containing alleged misrepresentations). Where the act itself is a consummate securities law violation, courts need not consider the materiality of the act to defendant's overall scheme. *Mayer v. Dev. Corp. of Am.*, 396 F. Supp. 917, 929 (D. Del. 1975). But where the act is not itself illegal, as is the case here, it must be material to the alleged violation to confer venue. *Id.*

Much of the Section 27 venue case law arises in the context of 10b violations involving fraudulent misrepresentations, rather than insider trading. As noted above, those cases allow venue wherever defendants disseminate misrepresentations. *In re AES Corp. Sec. Litig.*, 240 F. Supp. 2d 557, 559 (E.D.Va. 2003) ("case law uniformly supports the proposition that the alleged transmission of the misleading materials into the district is a venue-sustaining act under § 78aa"). The few venue cases involving insider trading claims ground venue where the defendant purchased securities – thus, a defendant could by tried in New York where he purchased stock there via telephone. *See, e.g.*, *SEC v. Thrasher*, No. 92 Civ. 6987 (JFK), 1993 WL 37044, at *2 (S.D.N.Y. Feb. 8, 1993) (defendant's "purchase and sale of Motel 6 shares that traded on the NYSE is an independent basis for venue"); *SEC v. Suman*, 684 F. Supp. 2d 378, 385 (S.D.N.Y. 2010) (action against defendants residing in Utah and Canada brought in New York where they purchased stock on New York-based NASDAQ exchange).

Here, the SEC seeks to base venue on Michael Carroll's disclosure of inside information to David in one or more telephone calls while Michael was in Louisville. Unlike *Thrasher*, where purchasing securities occurred in the forum district and itself was the SEA violation, David's receipt of insider information did not violate the SEA. However, the *Thrasher* opinion also notes the defendant's call to a New York analyst to learn more about the company at issue

was sufficient to establish venue because it furthered his insider trading scheme. 1993 WL 37044 at *3; *see also Mariash v. Morill*, 496 F.2d 1138, 1144 (2d Cir. 1974) (finding conduct by defendant's agent in New York conferred venue even though alleged wrongdoing occurred in Boston).

The Court concludes Michael's disclosure to David about the forthcoming Mitsui acquisition was an essential step and a material act in David's alleged consummation of an insider trading violation. Indeed, the disclosure was necessary to David's alleged scheme. Although not itself the SEA violation, the Kentucky-based disclosure was an act substantial enough to confer venue under Section 27's broad venue provision.

### III.

The SEC alleges no act directly tying Christopher Calcutt to Kentucky. Instead, it relies on a co-conspirator theory of venue, which this Court previously has recognized. *Clayton*, 2008 WL 5046806, at *2-3 (describing and applying theory). The theory has been explained as follows:

> "[I]n a multi-defendant securities proceeding, where a common scheme of acts or transactions to violate the securities acts is alleged, if venue is established for any of the defendants in the forum district there is sufficient justification to establish venue as to the other defendants, even in the absence of any contact or substantial contact by any one defendant within that district."

*Id.* (quoting *SEC v. Nat'l Sutdent Mktg. Corp.*, 360 F. Supp. 284, 291-92 (D.D.C. 1973); *see also Sec. Investor Protection Corp. v. Vigman*, 764 F.2d 1309, 1317 (9th Cir. 1985) (following Second and Fifth Circuits in applying co-conspirator theory to securities litigation) *and DeMoss v. First Artists Prod. Co., Ltd.*, 571 F. Supp. 409, 412 (N.D. Ohio 1983) *but see SEC v. Johnson*, 650 F.3d 710, 715 (D.C. Cir. 2011) (rejecting co-conspirator theory of venue).

Although Defendants point out a case from the Western District of Missouri reaching the opposite conclusion on similar facts, the Court finds that under these facts venue may lie under the co-conspirator theory for the SEC's claim against Christopher Calcutt. *See SEC v. Trikilis*, No. 91-0560-CV-W-2, 1991 WL 319066, at *2-3 (W.D.Mo. Oct. 16, 1991). The SEC alleges David Calcutt gave Christopher the same inside information he received from Michael and that Christopher knew the information came from a STTX insider. Christopher's alleged subsequent trading on this information renders him a participant in the same insider trading scheme as David – both brothers traded on the same inside information from the same Kentucky source. *See Thrasher*, 1993 WL 37044, at *2 (holding that defendant's trading on information known to come from a corporate insider rendered him a knowing participant in the scheme under the co-conspirator theory).

The Court recognizes that application of the co-conspirator rule allows venue over a defendant with virtually no connection to Kentucky. However, the proper application of the venue rules seems to allow it in these circumstances. As the Court has concluded venue lies as to the action against David, so it also finds venue is appropriate for the claim against Christopher.

Being otherwise sufficiently advised,

IT IS HEREBY ORDERED that Defendants' motion to dismiss for improper venue under Fed. R. Civ. P. 12(b)(3) is DENIED.

cc: Counsel of Record