UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

CIVIL ACTION NO. 3:11-CV-00165-H

SECURITIES AND EXCHANGE
COMMISSION,                                                                                          PLAINTIFF

V.

STEPHEN SOMERS, et al.                                                                          DEFENDANTS

**MEMORANDUM OPINION AND ORDER**

On March 17, 2011, the SEC filed this complaint against eight defendants alleging a single claim of insider trading in violation of Section 10(b) of the Securities Exchange Act and more specifically, Rule 10b-5. The complaint generally alleges that Defendants purchased stock of Steel Technologies, Inc. ("STTX") on the basis of material non-public information concerning the forthcoming acquisition of STTX before the information became publically known. At this juncture, six of the eight defendants have settled with the SEC. *See* ECF No. 142. Two defendants remain: John Monroe and Stephen Somers.

Of immediate focus is a discovery dispute between the SEC and Somers. Briefly, the SEC alleges that Somers received material non-public information concerning the STTX acquisition from his friend, Monroe. In turn, Monroe allegedly received the information from David Stitt, an employee of STTX. The SEC avers that Somers knew both that Monroe was a good friend of Stitt and that Stitt worked for STTX. Shortly before the public announcement of the acquisition, Somers sold General Electric stock that he had held for more than a year and used the proceeds to purchase STTX stock. Somers denies any wrongdoing, maintaining that he

lacked the requisite scienter to be held liable as a remote tippee under the classical theory of insider trading.[1]

Three discovery motions are before the Court: 1) Somers' motion to compel discovery; 2) the SEC's motion for a protective order; and 3) the SEC's motion for leave to file an amended complaint. The Court will address the general discovery issues raised in the first motion, and then turn to Somers' more specific request for information concerning the SEC's post-complaint press releases, which are the subject matter of the SEC's motion for a protective order. Finally, the Court will evaluate the SEC's motion for leave to file an amended complaint.

I.

Somers' motion to compel alleges that the SEC provided deficient responses to several of his interrogatories and requests for protection. The parties discuss in detail the particular interrogatories and requests at issue, but generally the SEC objected to Somers' discovery requests, because they are overly broad and unduly burdensome. The SEC argues that it would be prejudiced if required to "state every fact" it intends to rely on to prove its case. Additionally, the SEC argues that many interrogatories and document requests seek privileged information.

In their briefs, the parties largely rehash arguments made at the previous motion to dismiss stage, and make arguments the Court anticipates encountering in the forthcoming motions for summary judgment. However, the motions presently before the Court involve nonsubstantive discovery issues. The Court finds that the SEC has complied with Somers' discovery requests to the extent required under the Federal Rules of Civil Procedure, and has

---

[1] To prove a violation of Rule 10b-5, the SEC must establish that Somers engaged in "(1) misrepresentations or omissions of material facts (2) made in connection with the offer, sale or purchase of securities (3) with scienter on the part of the defendant[]." *SEC v. George*, 426 F.3d 786, 792 (6th Cir. 2005). In pursuing a Rule 10b-5 action, the SEC typically utilizes one of two general theories of insider trading. Under the "classical theory" of insider trading, Rule 10b-5 is violated "when a corporate insider trades in the securities of his corporation on the basis of material, nonpublic information." *United States v. Hagan*, 521 U.S. 642, 651-52 (1997). Under the "misappropriation theory" of insider trading, Rule 10b-5 is violated when a corporate outsider "misappropriates confidential information for securities trading purposes, in breach of a duty owed to the source of the information." *Id.* at 652.

2

provided full and complete discovery of the evidence. Rather than providing vague and boilerplate responses and objections, it offered a detailed recitation of the principal facts supporting its claim against Somers. The SEC has supplemented and amended disclosures throughout the course of discovery.

Any remaining information Somers suspects is being withheld is privileged under the attorney work product privilege, the attorney-client privilege, the deliberative process privilege, the investigative privilege, or some combination thereof. For instance, Requests 1 and 7 broadly ask the SEC to provide all testimony, transcripts, exhibits and other items produced by all witnesses in the SEC's investigation, including information related to its decision to bring this action under a classical theory of insider trading. Before pursuing a course of action, the SEC circulates an Action Memo between SEC attorneys and other SEC staff that advises the SEC whether to file an enforcement lawsuit or take some other action against an implicated individual. Somers improperly asks for SEC's internal reports, emails and memoranda concerning the Action Memo. The myriad of privileges clearly cover the information sought as it memorializes the opinions of SEC attorneys about the viability and wisdom of bringing a particular action against a defendant. These sorts of documents are created in anticipation of litigation, and at the very least, the attorney work product privilege protects them. *See United States v. Peitz*, 2002 WL 3110168, *9 (N.D. Ill. Sept. 20, 2001) (holding that the attorney-client privilege protects SEC Action Memos).

Additionally, Somers argues that the SEC has failed to provide a privilege log delineating all documents withheld as privileged. The SEC counters that the requested documents are either irrelevant or so plainly privileged that it would be unduly burdensome to log. The Federal Rules of Civil Procedure require that where a party withholds otherwise relevant information and

documents by claiming they are privileged, that party "shall describe the nature of the documents, communications, or things not produced or disclosed in a manner that . . . will enable other parties to assess the applicability of the privilege or protection." *See* FED. R. CIV. P. 26(b)(5). "[I]n a typical case, a Rule 26(b)(5) privilege log will individually list withheld documents and provide pertinent information for each document, this is not an inflexible requirement." *SEC v. Nacchio*, 2007 WL 219966, *9 (D. Colo. Jan. 25, 2007). While a party may in some circumstances categorize the documents, it must abide by the mandates of Rule 26(b)(5) and provide a reasonably thorough privilege log.

The SEC has failed to sufficiently argue that this requirement should be excused as burdensome. *See Estate of Manship v. United States*, 232 F.R.D. 552, 561 (M.D.La. 2005) ("Even if describing the protected materials in a log may be difficult to do without revealing the confidential natural of the documents, it is nevertheless the obligation of the United States under Fed. R. Civ. P. 26(b)(5)."). Therefore, the Court will grant Somers' motion in this respect and directs the SEC to produce a privilege log for all materials withheld on the basis of a privilege. The SEC has already provided a privilege log to Somers, though the SEC admittedly failed to log all information sought.[2] Thus, to the extent the SEC has not provided a privilege log for documents it asserts as privileged, it must do so.

## II.

Somers' Requests 2 through 6 relate to his Sixth Affirmative Defense, which asserts that the SEC is not entitled to equitable relief because it issued a press release surmising that all

---

[2] The Court notes that the SEC can likely categorize the withheld documents. "[I]n appropriate circumstances, the court may permit the holder of withheld documents to provide summaries of the documents by category or otherwise limit the extent of his disclosure. This would certainly be the case if (a) a document-by-document listing would be unduly burdensome and (b) the additional information to be gleaned from a more detailed log would be of no material benefit to the discovering party in assessing whether the privilege claim is well grounded." *SEC v. Thrasher*, 1996 WL 125661, *1 (S.D.N.Y. Mar. 20, 1996).

defendants in this case acted in concert and this cast him in a false light. The original press release, which was later redacted, stated that the defendants "together" purchased $578,000 of STTX stock and made $320,000 in illegal profits. It contained a chart depicting the various players and as Somers contends, created the strong inference that the defendants acted in concert. The SEC counters that any inference of concerted action is negated by the fact that the complaint, which was linked to the release, made clear that the SEC was not alleging that all eight defendants acted in concert when purchasing STTX stock. Still, Somers requests all documents prepared in furtherance of the press release, and those particularly related to the SEC's decision to issue a second press release that contained the same information as the original, but omitted the SEC's chart.

The SEC objects to these requests and moves for a protective order barring Somers' efforts to take discovery on his press release affirmative defense. The SEC argues that Somers is not permitted to take discovery on a meritless affirmative defense and that the discovery Somers seeks is both irrelevant and privileged. Somers maintains that the information is important, because it could lead to proof that the SEC's classical theory case against him is meritless.

The Court will grant the SEC's motion for a protective order because the SEC press releases, issued after the SEC filed its complaint, have no relevance in the case at bar. Rule 26(b)(1) provides that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense . . ." FED. R. CIV. P. 26(b)(1). Notwithstanding the strong argument that these documents are likely protected by a privilege, Somers fails to argue why the post-complaint press releases have any material bearing on the case against him. As discussed in a recent telephonic conference with the parties, the matter is collateral to the insider trading case. Somers' argument for discovery is inextricably bound to his contention that the

SEC has failed to allege a classical theory of insider trading case against him. This latter argument is better suited in a motion for summary judgment, rather than a request for privileged, post-complaint internal documents.

III.

Lastly, the SEC seeks leave to amend its complaint in two limited respects: 1) to allege that Stitt held the title of General Manager of Sales for the Northeast Region of STTX, rather than Vice President, as originally alleged, and 2) to allege that Monroe's inside information tip to his friend Somers regarding the STTX's upcoming acquisition may have occurred during an 18-minute telephone conversation between the two that took place on Sunday, February 25, 2007, in addition to the already alleged phone call that occurred on Monday, February 26, 2007.

Federal Rule of Civil Procedure 15(a)(2) provides that "the court should freely give leave [to amend] when justice so requires." FED. R. CIV. P. 15(a)(2). The decision to grant or deny a plaintiff leave to amend his complaint "is committed to the district court's sound discretion" and is generally denied "in cases of bad faith, dilatory motive, or undue prejudice to the opposing party." *Ruschel v. Nestle Holdings, Inc.*, 89 F. App'x 518, 521 (6th Cir. 2004) (internal quotations omitted). Pursuant to Rule 16(b)(4), once the court enters a scheduling order for the matter, amendments to pleadings "may be modified only for good cause and with the judge's consent." FED. R. CIV. P. 16(b)(4). The central focus in such a motion is the possible prejudice to the party opposing the modification. *See Inge v. Rock Fin. Corp.*, 281 F.3d 613, 625 (6th Cir. 2002).

The proposed amendments do not add new claims or new parties to the action. They appear to be factual corrections gleaned during discovery. The Court finds good cause in that the

SEC seeks to amend its complaint to conform to discovery and to correct a misstatement as to Stitt's job title, which may or may not be of any consequence.[3]

Somers will not suffer any material prejudice as a result of the amended allegations, as he was on notice of the allegations and the proposed amendments do not change the nature of the claim against him. *See McNeal v. City of Hickory Valley, Tenn.*, 2002 WL 1397249, *3 (W.D. Tenn. June 4, 2002) (granting a motion to amend the complaint because the proposed amendments were "merely a clarification of the allegations pleaded in the original complaint"). If Somers takes substantive issue with the amended complaint, his arguments are better suited for a dispositive motion.

Being otherwise sufficiently advised,

IT IS HEREBY ORDERED that Somers' motion to compel is SUSTAINED IN PART and DENIED IN PART. The SEC must provide an amended privilege log identifying the remaining documents it is withholding from discovery and the applicable privilege.

IT IS FURTHER ORDERED that the SEC's motion for a protective order is SUSTAINED and Somers is barred from pursuing discovery concerning the basis for the SEC's two press releases.

IT IS FURTHER ORDERED that the SEC's motion for leave to file an amended complaint is SUSTAINED.

---

[3] The SEC argues that Stitt was not Vice President in name only, and that his responsibilities during the relevant period entailed that of a Vice President. Somers argues that the job title is material in that Somers could not have possessed the requisite scienter to commit insider trading because he could not reasonably believe that information from Stitt would be material, non-public information. This dispute is better addressed in a dispositive motion.

cc: Counsel of Record