UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

CIVIL ACTION NO. 3:11-CV-165-H

SECURITIES AND EXCHANGE COMMISSION                          PLAINTIFF

V.

PATRICK M. CARROLL, *et al.*                                                    DEFENDANTS

**MEMORANDUM OPINION AND ORDER**

The Securities and Exchange Commission (SEC) brought this civil action alleging violations of Section 10(b) of the Securities Exchange Act of 1934 (Exchange Act) by Defendants Patrick M. Carroll, James P. Carroll, William T. Carroll, David Mark Calcutt, Christopher T. Calcutt, David A. Stitt, John Monroe, and Stephen Somers. Defendants traded in the securities of Steel Technologies, Inc. (STTX) in the month before the February 28, 2007 public announcement of its acquisition by Mitsui & Co. USA Inc. (Mitsui). The six Defendants who worked for STTX have settled; the remaining two Defendants are David Stitt's alleged tippee, John Monroe, and Monroe's alleged tippee, Stephen Somers.

Defendant Somers moved for summary judgment on the SEC's claim against him. No particular case or precedent is dispositive here. In the end, the resolution turns upon what permissible inferences a reasonable jury might conclude from the evidence. For the reasons that follow, the Court denies the motion.

I.

The Court will now briefly summarize the facts relevant to the SEC's claim against Somers. STTX processes flat-rolled steel to specific requirements for customers in steel-consuming industries. STTX is headquartered in Louisville, Kentucky and was traded on the

NASDAQ at all relevant times. Mitsui is the largest overseas subsidiary of Mitsui & Co., Ltd., headquartered in Tokyo, Japan.

There are three primary individuals involved in the SEC's claim against Somers. The alleged insider and initial tipper is David Stitt, who was General Manager of Sales for STTX's Northeast Region and based out of Pennsylvania at all relevant times. Stitt's alleged tippee and Somers's alleged tipper is John Monroe, a Pennsylvania car sales manager. Monroe was friends with both Stitt and Somers. Somers, the alleged remote tippee, co-owns Somers Brothers Capital, LLC, a commodity trading advisor and commodity pool operator that he operated in Pennsylvania.

The relevant events occurred in the week prior to STTX's public announcement of its acquisition by Mitsui. Stitt reported to STTX's Senior VP of Sales, Brad Goranson, and President and COO, Michael Carroll, both of whom knew about STTX's acquisition discussions with Mitsui before Stitt traded. During February 2007, Goranson and Stitt communicated often, sometimes daily. On Friday, February 23, Stitt was told that he must attend a special meeting at STTX's Louisville headquarters on Monday, February 26, either by Goranson or Fran Cooley Adams, Executive Assistant to Michael Carroll. Stitt claims that he was not told the purpose of the meeting, and both Goranson and Adams deny telling Stitt about the forthcoming acquisition. Never before had Stitt been told to fly to Louisville for a meeting on such short notice without also being told the purpose of the meeting. According to Goranson, the purpose of the meeting was to inform company officers about Mitsui's planned acquisition of STTX.

On February 23, Stitt had an unprecedented 19 telephone calls with STTX's headquarters, five of which occurred between 3:58p.m. and 4:22p.m. During one of these calls, Stitt questioned Executive Assistant Julie DuChane about the purpose of the special meeting.

DuChane possessed information about STTX's acquisition that she received from Adams but denied providing it to Stitt. At the end of the day, Stitt purchased almost $40,000 of STTX stock, increasing his position in company stock from 2% to 17% of his overall 401(k) portfolio.

On Sunday, February 25 and Monday, February 26, there was a series of phone calls. On Sunday at 1:40p.m., Stitt called his parents' condo and had a 10-minute conversation. At 1:57p.m., Stitt called Monroe's cell phone and had a 14-minute conversation. At 2:23p.m., Monroe called Somers's cell phone and had an 18-minute conversation. The same minute Monroe's conversation with Somers ended, Monroe called his financial adviser Mr. Waldron.

On Monday, February 26 at 10:20a.m., Monroe called Somers at work and had a 10-minute conversation. At 10:36a.m., Monroe called Waldron again and had an 8-minute conversation. Finally, at 10:45a.m., Monroe called Stitt.

At 3:48p.m. that day, Somers bought 2,000 shares of STTX stock. At the time he traded the stock, Somers knew that Stitt worked for STTX, that STTX was publicly traded, and that a duty of confidentiality generally applied to nonpublic information about acquisitions. In addition, Somers did not know of anyone else that Monroe knew of who worked at STTX.

At 4:00p.m., the Mitsui acquisition plan was announced to STTX senior sales personnel, including Stitt, at the meeting in Louisville, Kentucky. Meeting attendees signed the Bluegrass Confidentiality Agreement. On February 28, the acquisition was publicly announced. Between speaking with Stitt and STTX's public acquisition announcement, both Monroe and Stitt's 75-year-old mother purchased STTX stock. Somers sold his STTX stock 8 days after purchasing it, generating a profit of approximately $20,000.

The content of the phone calls between the parties is disputed. Because of the significantly disparate characterizations of these telephone calls, the Court will quote deposition

testimony directly. In his deposition, Monroe was asked what led to his decision to purchase 3,000 shares of STTX stock. He replied: "In a conversation that I had with David Stitt, the week of the 20th . . . he was on a hunch that there was a possibility of Steel Technologies buying somebody or somebody buying them . . . ." When Monroe was asked if Stitt told Monroe the basis of his hunch, Monroe replied, "He was scheduled to travel out there for a meeting." When Monroe was asked if Stitt told Monroe what he thought the meeting was about, Monroe replied, "He thought it could be . . . one, he could be getting canned, maybe they were buying something, maybe they were getting bought. One of the three, guessing, speculating."

Other deposition evidence pertains to Monroe and Somers's conversation. Both men admit to discussing STTX. When Monroe was asked if he passed on the information he got from Stitt to Somers prior to February 26, Monroe replied, "Yes." When Somers was asked what he remembered about their conversation, Somers replied, " . . . Monroe made mention of Steel Technologies and said something to the effect that: Take a look at Steel Technologies. There might be something going on at the company." Somers also said that, to him, the fact that "something was going on" with STTX, given Somers's background, meant that "there's something that's going to impact the share price."

II.

Somers moves for summary judgment under Federal Rule of Civil Procedure 56, which entitles a party to summary judgment where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant must show that there is no genuine issue as to any material fact or that the nonmoving party cannot prove an essential element of its case for which it has the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322−23 (1986). Once accomplished, the

nonmoving party can overcome summary judgment by controverting the movant's argument with specific facts. *Matsushita Electric Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The Court need not accept unsupported or conclusory allegations. *Bell v. Ohio State Univ.*, 351 F.3d 240, 253 (6th Cir. 2003). However, the Court must view the record and make inferences from the alleged facts in the light most favorable to the nonmoving party. *Hawkins v. Anheuser-Busch, Inc.*, 517 F.3d 321, 339 (6th Cir. 2008).

III.

Section 10b of the Exchange Act makes it unlawful for any person "to use or employ, in connection with the purchase or sale of any security . . . any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the [SEC] may prescribe. . . ." 15 U.S.C. § 78j(b). SEC Rule 10b-5 further provides:

> It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails or of any facility of any national securities exchange,
>
> (a) To employ any device, scheme, or artifice to defraud,
>
> (b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or
>
> (c) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person,
>
> in connection with the purchase or sale of any security.

17 C.F.R. § 240.10b–5 (2014). Trading on the basis of material, nonpublic information in connection with the breach of a fiduciary duty violates Rule 10b-5. *See Dirks v. SEC*, 463 U.S. 646, 654 (1983).

As the Court has previously discussed, the SEC's action is based on the classical theory of insider trading.[1] To establish tippee liability as to Somers, the SEC must prove that: (1) the tipper possessed material nonpublic information about the corporation, (2) the tipper provided the information to him, (3) he purchased the corporation's securities while possessing that information, (4) he knew or should have known the information was provided in violation of a relationship of trust, and (5) the tipper benefitted from the disclosure. *SEC v. Blackwell*, 291 F. Supp. 2d 673, 696 (S.D. Ohio 2003) (citing *SEC v. Warde*, 151 F.3d 42, 47 (2d Cir. 1998)). In addition, the initial tipper must have been an insider.

Somers argues that the SEC's case against him fails because: (1) Stitt was not an insider, (2) the SEC cannot show that material information was passed to Somers, (3) Somers did not know nor should he have known that any information Monroe gave to him was improperly obtained, (4) Somers did not act with the requisite scienter.

IV.

In order for Somers to be liable under a classical tippee insider trading theory, Stitt must be found to have been an insider in February 2007.

There is no definitive test for defining an "insider" under 10(b) liability.[2] Courts have construed the term "insider" broadly, in substantially similar ways. The definition of "insider" is not limited to persons who are directors and officers. *See Locke v. Comm'r of Internal Revenue*,

---

[1] *See SEC v. Carroll*, 3:11-CV-165-H, 2011 WL 5880875, at *4 n.2 (W.D. Ky. Nov. 23, 2011) (denying Somers's motion to dismiss and specifying that the SEC's cause of action was brought under the classical theory of insider trading liability). After the issuance of the Court's November 23, 2011 opinion, the SEC amended its complaint to provide that Stitt was not, in fact, a Vice President of Sales at STTX but rather a General Manager of Sales. Although misappropriation theory could potentially apply more aptly now, where the status of Stitt as an insider is a closer case, neither the SEC's amended complaint nor its response to Somers's motion for summary judgment mentioned an alternative theory of relief under misappropriation theory. Therefore, the Court will construe the SEC's claim against Somers as arising solely under the classical theory of insider trading, consistent with its prior opinion.

[2] Section 16(b) of the 1934 Act defines "insiders" as directors, officers, and 10% shareholders, 15 U.S.C. § 78p, but the definition under 10(b) is interpreted as more expansive. *See Myzel v. Fields*, 386 F.2d 718, 739 (8th Cir. 1967).

6

65 T.C. 1004, 1008 (1976) *aff'd sub nom. Locke v. C. I. R.*, 568 F.2d 663 (9th Cir. 1978). Nor is it limited to employees of the corporation. *SEC v. McGee*, 895 F. Supp. 2d 669, 675 (E.D. Pa. 2012) (citing *United States v. O'Hagan*, 521 U.S. 642, 651–52 (1997)). Insiders are individuals who have greater knowledge of the financial affairs of a corporation due to their position or intimate association with the corporation. *See In re Cady, Roberts & Co.*, 40 S.E.C. 907, 912 (1961); *Myzel v. Fields*, 386 F.2d 718, 740 (8th Cir. 1967).

As the Second Circuit articulated:

> The essence of [Rule 10(b)-5] is that anyone who, trading for his own account in the securities of a corporation has 'access, directly or indirectly, to information intended to be available only for a corporate purpose and not for the personal benefit of anyone' may not take 'advantage of such information knowing it is unavailable to those with whom he is dealing,' i.e., the investing public.

*SEC v. Tex. Gulf Sulphur Co.*, 401 F.2d 833, 848 (2d Cir.1968) (quoting *Cady, Roberts,* 40 S.E.C. at 912). Put more succinctly, an insider is "anyone who has access to the issuer of stock and thereby obtains nonpublic information." *Moss v. Morgan Stanley Inc.*, 719 F.2d 5, 10 n.8 (2d Cir. 1983); *see also SEC v. Fox*, 654 F. Supp. 781, 790 (N.D. Tex. 1986). The root of this definition is the fiduciary duty an insider owes to the shareholders of the corporation. *Blackwell*, 291 F. Supp. 2d at 688 n.7 (citing *O'Hagan*, 521 U.S. at 652).

In the early filings of this case, Stitt's February 2007 position at STTX was characterized as Vice President of Sales for STTX's Northeast Region, a title which would raise an inference of insider status. However, it was later learned that Stitt was in fact General Manager of Sales for STTX's Northeast Region at the time of the relevant events.

In Somers's motion for summary judgment, he argues that Stitt was not entrusted with confidential information about the Mitsui acquisition until the 4p.m. meeting on Monday, nor was he bound by confidentiality until he signed the Bluegrass Confidentiality Agreement at that

meeting. He further argues that Stitt was merely a regional salesperson, not part of STTX's leadership, who took no part in the company's major financial decisions such as mergers and acquisitions and would thus have no reason to be informed of the acquisition prior to the Monday meeting. These facts support a valid and potentially persuasive argument on behalf of Somers.

The SEC, however, points out that, as an employee of STTX, Stitt had repeatedly agreed to be bound by STTX's Code of Business Conduct, which included provisions relating to confidentiality and insider trading. Moreover, Stitt's job title is not conclusive as to his insider/outsider status. Stitt testified at his deposition that his job responsibilities as General Manager of Sales involved overseeing and managing the sales of the Northeast region. As Vice President of Sales, the only specific difference in responsibilities Stitt cited was that the territory he oversaw expanded to include Ohio.

Somers makes a viable argument that Stitt was not an insider, but not one conclusive as a matter of law. Depending on the evidence at trial, the question of Stitt's status could be subject to future motions. Under the current circumstances, Stitt's status as an insider remains a question for the jury.

V.

Next, Somers argues that the SEC cannot show that material information was passed to him. The SEC must prove that: (1) Stitt possessed material nonpublic information, (2) Stitt passed this information to Monroe, and (3) Monroe passed the information to Somers.

A.

Information is material "only if a reasonable investor would have viewed the [information] as having significantly altered the total mix of information available." *Ashland, Inc. v. Oppenheimer & Co., Inc.*, 648 F.3d 461, 468 (6th Cir. 2011) (internal quotation marks and

8

citation omitted). Somers argues that the information in question was simply the fact that Stitt was called to a meeting at company headquarters. The fact of the unusual meeting itself could possibly be material. *See SEC v. Happ*, 392 F.3d 12, 22−23 (1st Cir. 2004) (scheduling of unusual meeting on short notice, along with other information, was material); *SEC v. Roszak*, 495 F. Supp. 2d 875, 888 (N.D. Ill. 2007) ("Information about a potential merger, including information that meetings are occurring relative to a potential merger, is often considered material.").

However, the SEC contends that more information than the existence of a meeting was involved, namely, information about an acquisition or a potential or likely acquisition, which is undoubtedly material. *See SEC v. Michel*, 521 F. Supp. 2d 795, 825 (N.D. Ill. 2007) ("Few matters are considered more material than a corporation's involvement in a possible merger or acquisition."); *SEC v. Mayhew*, 121 F.3d 44, 52 (2d Cir. 1997) (certainty is not required for information about a potential merger to be material); *Basic Inc. v. Levinson*, 485 U.S. 224, 233−34 (1988) (rejecting the argument that pre-merger information is only material once there is "agreement-in-principle" as to the price and structure of the transaction.) In addition, the SEC is correct that the 60% increase in STTX's share price immediately after the public announcement of STTX's acquisition by Mitsui provides strong evidence of materiality. *See Michel*, 521 F. Supp. 2d at 825−26 ("Also significant to the materiality analysis is the fact that Blue Rhino's stock price increased by 20 percent when the merger was publicly announced."); *Blackwell*, 291 F. Supp. 2d at 689 n.9 ("After the public announcement . . . the price of Worthington stock increased dramatically, giving rise to the clear inference [of materiality]."); *United States v. Mylett*, 97 F.3d 663, 667 (2d Cir. 1996) ("[T]he sharp jump in NCR's stock price after a formal acquisition announcement was made suffices to support a finding" of materiality.).

B.

Somers argues that without written evidence, records of the content of telephone conversations, and confirming testimony from Stitt's alleged sources of nonpublic information, the SEC's case fails. However, writings against interest, wiretaps, and other direct admissions are not essential to the SEC's case. Direct evidence is rarely available in insider trading cases, since the tipper and tippee are usually the only witnesses to the exchange. The SEC is entitled to prove its can through circumstantial evidence. *Roszak*, 495 F. Supp. 2d at 886−87; *SEC v. Ginsburg*, 362 F.3d 1292, 1298 (11th Cir. 2004); *SEC v. Sargent*, 229 F.3d 68, 75 (1st Cir. 2000); *SEC v. Singer*, 786 F. Supp. 1158, 1164−65 (S.D.N.Y. 1992). But evidence of mere contact with an insider followed by a trade is not enough to support an inference of liability. *SEC v. Rorech*, 720 F. Supp. 2d 367, 410 (S.D.N.Y. 2010).

As a preliminary matter, the Court notes Somers's innocent explanation for his trade in STTX does not by itself justify summary judgment. *See Roszak*, 495 F. Supp. 2d at 887−88; *Ginsburg*, 362 F.3d at 1301. "Innocent explanations offered by [] defendants are limited by the inferences that must be drawn against them on their motions for summary judgment." *SEC v. Van Wagner*, 97 C 6826, 1999 WL 691836, at *4 (N.D. Ill. Aug. 25, 1999). The existence of more than one plausible theory of fact is an issue for the jury to resolve. The Court will not credit one plausible version of the facts over another by making credibility determinations. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

Stitt consented to judgment without admitting fault. Still, circumstantial evidence in the record is sufficient to support an inference that Stitt both possessed material, nonpublic information and passed it to Monroe. On Friday, February 23, either Goranson or Adams, both of whom knew about the impending Mitsui acquisition, told Stitt to report to headquarters for a

meeting on Monday, the next business day. Never before had Stitt been told about such a meeting without learning its purpose. Immediately afterward, an unusually large flurry of phone calls took place between Stitt and headquarters—a total of 19 calls over one business day. During one of those calls, Stitt asked DuChane, who knew about the forthcoming acquisition, what the purpose of the meeting was. Immediately after concluding one of his calls with headquarters, Stitt purchased $40,000 worth of STTX stock. Stitt had not made any transactions in his 401(k) account in the previous 17 months, and he had just taken out a $20,000 loan the previous month. *Cf. SEC v. Musella*, 748 F. Supp. 1028, 1039 (S.D.N.Y. 1989) (defendant's unusually large trade supported an inference of insider trading). That purchase increased his position in company stock from 2% to 17%. Two days later, on Sunday, February 25, Stitt called both his mother and Monroe, both of whom purchased STTX stock prior to the public announcement of the acquisition.

Further evidence supports both the SEC's claim that Stitt possessed material, nonpublic information and that he passed it to Monroe. Both Stitt and Monroe made inconsistent statements to the SEC and the Financial Industry Regulatory Authority (FINRA), which can evidence consciousness of guilt. *See id.* at 1040; *Roszak*, 495 F. Supp. 2d at 888. In addition, Stitt's Sunday conversation with Monroe lasted 14 minutes. Monroe admitted that Stitt and he spoke about STTX and that Stitt told Monroe "he was on a hunch that there was a possibility of Steel Technologies buying somebody or somebody buying them." Monroe had previously denied that he and Stitt discussed STTX at all.

Monroe's subsequent actions provide additional circumstantial evidence that the information passed from Stitt to Monroe was material. *See SEC v. Binette*, 679 F. Supp. 2d 153, 156 (D. Mass. 2010) (citing *Tex. Gulf Sulphur Co.*, 401 F.2d 833, 851 (2d Cir. 1968) ("a major

factor in determining whether [non-public information] was a material fact is the importance attached . . . by those who knew about it.") About ten minutes after speaking with Stitt on Sunday, Monroe called Somers. The minute he hung up, Monroe called his financial advisor Waldron to immediately open a new brokerage account to purchase STTX stock. He had never before called his financial advisor on the weekend, and the two were not friends. Monroe spoke to Waldron at 10:36a.m. on Monday, February 26, for 8 minutes, and Monroe called Stitt one minute after his conversation with Waldron ended. That same day, Monroe's financial advisor made an unprecedented request that the normal account-opening procedures be waived so the account could be opened immediately, and Monroe spent over 40% of his annual salary on a $60,000 purchase of STTX. Monroe described himself as an "infrequent trader" with no investment strategy, and his purchase of STTX was his largest stock purchase ever.

From all of this evidence, a jury could reasonably infer that Stitt possessed material, nonpublic information which he passed to Monroe. Similar circumstantial evidence has been held sufficient to allow an inference of insider trading. *See, e.g., Roszak*, 495 F. Supp. 2d at 887 (tipper's access to insider information, telephone contact with individuals who then called others, and suspiciously timed trades by alleged tippees defeated defendant's summary judgment motion); *Ginsburg*, 362 F.3d at 1301 (calls from insider to father and brother and their subsequent trades created tipper/tippee fact issue for jury); *Warde*, 151 F.3d at 47−48 (access to insider information, telephone calls, and parallel trading was sufficient to support a jury finding of tippee liability); *Singer*, 786 F. Supp. at 1166 (implausible reasons for suspiciously timed trades among alleged tippers and tippees allowed for inference of insider trading); *Van Wagner*, 1999 WL 691836, at *3−4 (insider's access to information and suspicious trading of his children and friends precluded entry of summary judgment).

Finally, Somers objects that the SEC has not identified the source of Stitt's information, nor has it demonstrated that the source received a personal benefit. However, the SEC need not identify the exact person from whom Stitt learned inside information. It has satisfied its burden by putting forth evidence of communications with potential sources of information along with other evidence, such as timely and suspicious trading and contradictory explanations. *See SEC v. All Know Holdings, Ltd.*, 949 F. Supp. 2d 814, 818−19 (N.D. Ill. 2013). Further, since Stitt is the alleged insider, the source of any alleged receipt of material inside information need not have received a personal benefit. As described in the Court's order on Defendants' motion to dismiss, the personal benefit requirement is satisfied as to Stitt due to his friendship with Monroe and as to Monroe due to his friendship with Somers.

For these reasons, the SEC has presented enough evidence to support a finding that Stitt possessed material, nonpublic information, which he passed to Monroe.

C.

Similarly, the SEC has produced enough circumstantial evidence to support an inference that Monroe passed along material nonpublic information to Somers.

The circumstantial evidence is the following. Within 12 minutes of hanging up with Stitt on Sunday, February 25, Monroe called Somers and had an 18-minute conversation. The same minute he hung up the phone, Monroe called his financial advisor as described above. On Monday, February 26, Monroe called Somers for ten minutes from 10:20-10:30a.m., a few hours before Somers purchased STTX stock. Somers admitted to discussing STTX with Monroe during their phone conversation. Monroe admitted that Stitt told him information that could be characterized as information about a potential or forthcoming merger or acquisition at STTX, and he further admitted to passing that information to Somers. Somers's story has been

inconsistent insofar as his ability to recollect the details of his conversation with Monroe. Finally, Somers has admitted that he interpreted Monroe's comments to indicate that something was going to impact STTX's share price.

The SEC must also prove that Somers *used* this information to make his purchase of STTX stock. Somers argues that he had traded in STTX before, 1.5 years prior to his February 2007 trade, and he used a limit order rather than more aggressive investment techniques in his February 2007 purchase. While Somers contends that he purchased the stock based on his own research into publicly available information, that is but one plausible explanation of the facts. Another reasonable set of inferences points to insider trading. Somers's purchase could fairly be characterized as unusual for him, as he had not traded in his personal brokerage account for a year prior to this purchase. In addition, the fact that Somers sold his General Electric stock that he had held for more than a year during the same trade could be construed to have provided funds for his purchase of STTX. Overall, Somers's February 2007 purchase of STTX stock was four times greater in terms of shares and 276% greater in terms of money than any of his prior purchases of STTX stock. Finally, Somers sold his STTX stock within 8 days of purchasing it.

Of course, the jury could instead credit Somers's presentation of the facts. The jury could find that Monroe merely told Somers to take a look at STTX, Somers researched STTX, and he then made a purchase based on his independent research. Again, the task of the Court is not to credit one version of the facts over another. That Somers can point to weaknesses in the SEC's case or an alternative plausible explanation of the facts does not require entry of summary judgment in his favor.

In his motion for summary judgment and reply, Somers relies heavily on five cases: *Garcia*, *Horn*, *All Know Holdings*, *Goldinger*, and *Truong*. *SEC v. Garcia*, 10 CV 5268, 2011

WL 6812680 (N.D. Ill. Dec. 28, 2011); *S.E.C. v. Horn*, No. 10-cv-955, 2010 WL 5370988 (N.D. Ill. Dec. 16, 2010); *SEC v. All Know Holdings, Ltd.*, 949 F. Supp. 2d 814 (N.D. Ill. 2013); *SEC v. Goldinger*, 106 F.3d 409 (9th Cir. 1997); *SEC v. Truong*, 98 F. Supp. 2d 1086, 1098 (N.D. Cal. 2000). His reliance on these cases is, unfortunately, misplaced, as each is potentially distinguishable in a significant way from the current case.

*Garcia* and *Horn* both found that it was not enough to identify suspicious trading and ask the jury to infer that it was the product of insider trading. *Garcia*, 2011 WL 6812680, at *15; *Horn*, 2010 WL 5370988, at *7. In *Garcia*, the SEC could not permissibly simply "theorize[] that [defendant] Sanchez was informed of some unidentified information related to the proposed acquisition, at an unidentified time, by an unidentified insider." 2011 WL 6812680, at *15. Similarly, *Horn* found that the SEC did not specify what confidential information the insider possessed, and there was no corroborating trading by tippees. *See* 2010 WL 5370988, at *6-7. Also similarly, for many of the *All Know Holdings* defendants, the SEC could not point to them having had access to insider information or contact with an insider. *See* 949 F. Supp. 2d at 822.

By contrast, here the SEC has presented evidence, outlined more fully above, that Stitt communicated with individuals who knew of a forthcoming acquisition, and he, Monroe, and Somers had timely communications, closely followed by immediate, uncharacteristic, and profitable trades in STTX. Further, Somers and Monroe admit to discussing STTX in their telephone calls, with Monroe potentially admitting to passing on information about the impending acquisition.

*Goldinger*, an unpublished disposition, found that the SEC's evidence was too speculative to support its case. *See* 106 F.3d at *3. In that case, Goldinger's client, a Thrifty shareholder, told Goldinger about a potential merger so that Goldinger could prepare to give her

15

financial advice later that day.  Goldinger asked a colleague, Cohen, in the hallway if Cohen knew anything about Thrifty.  Cohen said no but became interested, researched Thrifty, found heavy trading in the last week, and purchased Thrifty stock.  Goldinger's query to Cohen in the hallway was not enough to support a prima facie misappropriation case.  *See id.*  Here, by contrast, the information passed between Stitt, Monroe, and Somers could be far more comprehensive, considering the deposition testimony outlined above.

*Truong* emphasized that, to prove tipper liability, the SEC must identify the information, prove its materiality, and prove possession and use by the tipper.  *See Truong*, 98 F. Supp. 2d at 1097.  The fact that a defendant worked in an open cubicle environment and therefore theoretically had the opportunity to view sensitive documents was not enough to support an inference of insider trading.  *See id.* at 1098−99.  Here, of course, there was far more than an open-cubicle environment.  In addition, while *Truong* said that suspicious trading alone was not enough to infer tipper liability, it specifically noted that the timing of sale could support an inference of *tippee* liability.  *See id.* at 1097 (citing *SEC v. Adler*, 137 F.3d 1325, 1341 (11th Cir. 1998)).

VI.

Finally, Somers argues that he did not know nor should he have known that any information Monroe gave to him was improperly obtained.  The Court will analyze this element in conjunction with the requirement of scienter, as the intersection of these topics appears to have caused confusion.

To satisfy the scienter requirement, the SEC must show that either knew or should have known there has been a breach of fiduciary duty.  *Dirks*, 463 U.S. at 660; *Warde*, 151 F.3d at 47.  That is, the tippee must have reason to know that "confidential information was initially obtained

and transmitted improperly. . . ." *SEC v. Obus*, 693 F.3d 276, 288 (2d Cir. 2012). In addition, the SEC must show that Somers tippee intentionally or recklessly traded while in knowing possession of that information. *See id.*

The circumstantial evidence in this case is sufficient to support such inferences. Somers knew Stitt from childhood, knew Stitt worked for STTX, did not know anyone else who worked for STTX, and other that Stitt, did not know of anyone else that Monroe knew at STTX. He knew that an employee of a publicly traded company is not permitted to disclose information about an acquisition before it is made public, and he knew that a tippee cannot trade based on that information. Somers had been a securities industry professional for many years, and he knew about the laws relating to insider trading. A tippee's sophistication supports an inference of knowledge that the information was obtained in violation of the tipper's fiduciary duty. *See Musella*, 578 F. Supp. at 442; *SEC v. Blackman*, 3:99-1072, 2000 WL 868770, at *8 (M.D. Tenn. May 26, 2000). Finally, Somers anticipated that the information he received from Monroe would affect STTX's share price. While this evidence is certainly open to more than one interpretation, it is sufficient to support an inference of the requisite knowledge of breach.

The evidence in this case also supports a finding that Somers intentionally or recklessly traded while in knowing possession of material, nonpublic information. Somers's trade in STTX was intentional. There is no evidence that Somers had a pre-existing plan to purchase STTX stock, nor that someone else had discretion to trade in Somers's account. Therefore, if the SEC proves that Somers used material, nonpublic information in his trade rather than, for example, his own independent research, this requirement will be met. *See Obus*, 693 F.3d at 288−89.

VII.

This is a close case at several levels. It will likely turn on the credibility of the parties' witnesses at trial. Based on the record, and construing all reasonable inferences in favor of the SEC, a jury could reasonably find all of the elements required to impose insider trading liability on Somers as a tippee under Rule 10(b)-5, namely, that: (1) Stitt was an insider, (2) Stitt possessed material nonpublic information about STTX, (3) Stitt tipped Monroe, who tipped Somers, (4) Somers purchased STTX's securities while possessing that information, (5) Somers knew or should have known the information was provided in violation of a relationship of trust, and (6) Stitt and Monroe benefitted from the disclosure. Because of the numerous outstanding issues of fact involved in this case, summary judgment is not appropriate.

Being otherwise sufficiently advised,

IT IS HEREBY ORDERED that Plaintiff Somers's motion for summary judgment is DENIED.

cc: Counsel of Record